IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

USAA CASUALTY INSURANCE
COMPANY and GARRISON PROPERTY
AND CASUALTY INSURANCE COMPANY,

                  Plaintiffs,

vs.                                         CIVIL NO.  12-1062 RB/LFG

THOMAS I. HANCOCK and THE ESTATE
OF JOSEPH THREADGILL,

                  Defendants.

**Consolidated With**

PRISCILLA THREADGILL, Individually, and
as Personal Representative of the Estate of Joseph
Threadgill; DAVID THREADGILL and DANIELLE
THREADGILL,

                  Plaintiffs,

vs.                                         CIVIL NO.  12-1257 RB/LAM

UNITED STATES AUTOMOBILE ASSOCIATION
CASUALTY INSURANCE COMPANY and
GARRISON PROPERTY AND CASUALTY
INSURANCE COMPANY,

                  Defendants.

### ORDER GRANTING
### PLAINTIFFS' MOTION FOR PROTECTIVE ORDER

       THIS MATTER is before the Court on "Plaintiffs' Motion for Protective Order" [Doc. 44].

Plaintiffs ask the Court to enter a protective order precluding discovery related to claims handling

matters and prohibiting the deposition of claims adjuster, Jada Justus.[1]  The Court considered the

---

[1]To the extent that some of these same issues concerning written discovery requests are raised in pending motions to compel, the Court will issue a separate opinion on those motions.  This Order primarily precludes the deposition of Ms. Justus.

Motion, Defendant The Estate of Joseph Threadgill's Response [Doc. 51] and Plaintiffs' Reply [Doc. 58].  In accordance with D.N.M.LR-Civ. 7.6(a), oral argument is not necessary, and the Court resolves this matter on the parties' submissions.

### General Background

The parties set out the following stipulations in the Joint Status Report. [Doc. 25, at 4.] On August 27, 2011, in Albuquerque, New Mexico, Joseph Threadgill ("Threadgill") was shot to death by Defendant Thomas I. Hancock ("Hancock") in the parking lot of T.D.'s Showclub, an adult entertainment nightclub.  Hancock shot Threadgill several times, including gunshots to the chest, neck, forearm, and an execution style shot to the back of Threadgill's head.  At the time of the shooting, Threadgill was unarmed, and Hancock fled the scene in his vehicle.  Bullets recovered from Threadgill's body revealed that he was shot by two separate weapons, which were later found in Hancock's possession.

At the time of the shooting, Hancock lived with his mother, Pamela Bosma.  Hancock was an insured under Plaintiff USAA Casualty Insurance Company ("USAA") homeowners' policy issued to his mother, as well as an insured under Plaintiff Garrison Property and Casualty Insurance Company's ("Garrison") automobile policy.  While the parties agreed on the foregoing statements, they disagree whether the USAA homeowners' policy issued to Pamela Bosma and the Garrison personal automobile policy issued to Hancock provide coverage for the wrongful death of Threadgill.

To resolve this issue of coverage, Plaintiffs filed a First Amended Complaint under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, as well as the New Mexico Declaratory Judgment Act, NMSA 1978 § 44-6-1 *et seq.* [Doc. 4.] Plaintiffs seek determination of

2

a single issue:  whether the subject insurance policies afford coverage for wrongful death damages arising from the "execution style shooting death" of Threadgill by Hancock.  [Id., at 2-3].[2]

Two months after USAA and Garrison filed this declaratory judgment action, the Estate of Joseph Threadgill ("Estate") filed a separate declaratory judgment in a State district court.  Plaintiffs removed that case to federal court.  In that litigation, that is consolidated with this case, the Estate seeks only a determination of coverage.  [CIV 12-1257 RB/LAM, Doc. 1-1.]  There is also a wrongful death action pending in State court brought by the Estate.  [Doc. 44, at 3 n.1.]

In the present litigation, as earlier indicated, the only issue presented for resolution is whether the separate homeowner and personal automobile policies afford coverage for wrongful death damages arising out of the shooting death of Threadgill by Hancock.  In other words, there is no pending claim for breach of contract, common law bad faith, or statutory bad faith against USAA or Garrison in either of the consolidated cases. [Id., at 4.]

Insurance company Plaintiffs contend that coverage is excluded pursuant to specific contractual language relating to intentional acts and criminal misconduct.  In contrast, the Estate argues that the specific exclusions on the policy are inapplicable.  It asserts that the "intentional acts exclusion" is not applicable because if the insured "lacks the mental capacity to act rationally [by virtue of voluntary intoxication] then the insured lacks a requisite subjective intent . . . ." [Doc. 58, Ex. A].  The Estate contends that Hancock was "so intoxicated that [he] lacked the mental capacity to act intentionally . . . ." [Id.]  Thus, the Estate's argument does not relate to an ambiguity in the policy language that could allow introduction of parol evidence.  See C.R. Anthony Co. v. Loretto Mall Partners, 112 N.M. 504, 817 P.2d 238, 241 (1991) (New Mexico's parol evidence rule

---

[2]Hancock was indicted for the first-degree murder of Threadgill and is currently awaiting trial in the Second Judicial District Court for the State of New Mexico.

precludes a party from introducing evidence extrinsic to the contract "for the purpose of construing the contract in a manner that varies or contradicts the clear and unambiguous language of the writing.").

## Motion for Protective Order

Plaintiffs seek broad discovery, including the handling of claims, the investigation of the claims, and denial of same.  In written discovery requests, the Estate, for example, asked Plaintiffs "to describe each and every step that was taken by USAA and Garrison or its agents in the investigation in the Claims File . . . and for each step please list the dates and person(s) involved." [*See* Doc. 44, at 8; Doc. 44-1.] The Estate also requested "a complete copy of the Claims File" for the pertinent claim, "including a copy of the file jacket (inside and out) . . . [including the computer claim notes]. . . and instructions regarding investigation and coverage questions." [Id.]  The Estate further sought production of "copies of all correspondence, documents, memoranda, minutes of meetings, memos or other information produced or received by USAA" regarding the pertinent claims file. [Id.]

On June 11, 2013, Plaintiffs served answers and objections to the Estate's written discovery requests.  [Doc. 44, Ex. A.]  On August 20, 2013, more than 60 days after receipt of Plaintiffs' answers and objections, the Estate filed a motion to compel [Doc. 53] that is pending and not fully briefed.[3]  Under the District's local rules, there is a question whether the motion to compel was timely filed.  *See* D.N.M.LR-Civ 26.6 (must act within 21 days of service of an objection; failure

_____

[3]On August 28, 2013, the Estate filed another motion to compel [Doc. 55], concerning answers and objections to a second set of written discovery.  Plaintiffs claim the Estate merely asked for the same information in the second set of discovery requests in order to circumvent the deadline for filing a motion to compel.  The Estate goes to some length in its response to explain the tardy first motion to compel.  Neither motion to compel is fully briefed.

4

to act within this time period constitutes acceptance of the objection).  However, the Court merely summarizes the motion practice that bears on this motion for protective order.  It will address separately any motions to compel once fully briefed.

The Estate seeks to depose the USAA claims representative Jada Justus ("Justus").  Plaintiffs refer to a Deposition Notice Duces Tecum that was issued to Justus on July 15, 2013, requesting that she bring with her a complete copy of the claims file at issue.  Although the Court did not locate a copy of the Deposition Notice, Plaintiffs state they believe the Estate seeks to examine Justus on the same matters that were the subject of written discovery to which Plaintiffs objected. [Doc. 44, at 9.] On July 24, 2013, USAA filed a Notice of Non-Appearance with respect to Justus's deposition [Doc. 45], noting it also filed the present Motion for Protective Order.

Plaintiffs assert that the Justus deposition should not proceed because counsel for the Estate seek "an end-run around Plaintiffs' otherwise valid objections to [written] claims handling discovery." [Doc. 44, at 1-2.] In addition, Plaintiffs contend that inquiry into Justus's investigation and claim handling is not relevant and not reasonably calculated to lead to the discovery of admissible evidence.  They further argue that Justus does not possess discoverable information concerning the pertinent coverage issues pending before the Court.  [Id., at 9.]

The Estate argues that Plaintiffs did not demonstrate "good cause" sufficient to permit the Court to issue the requested protective order. [Doc. 51, at 1-2] (citing Fed. R. Civ. P. 26(c)(1)) (court may, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," and forbid certain discovery).  The Estate further contends that USAA itself admitted in initial disclosures [Doc. 19] that Justus had discoverable information, although USAA later amended its initial disclosures to remove Justus from a list of persons with discoverable information. [Doc. 51, at 2.] The Estate also argues that Justus may have answered

certain written discovery.[4] [Id.]  Thus, according to the Estate, removal of Justus as a person with discoverable information does not negate USAA's original admission that Justus had discoverable information.

Moreover, the Estate asserts that it does not intend to question Justus about claims handling procedures, and that, instead, it wishes to ask specific questions about the language in the exclusions portions of the policy, how those terms are interpreted, and what manuals or guides Justus uses to interpret policy language. [Id., at 4.] The Estate then urges that some of the information it sought in written discovery to which Plaintiffs objected is relevant, *e.g.,* claims manuals, claims file, and correspondence. [Id.]

Finally, the Estate argues that discovery is to be construed broadly, and that for all of the reasons asserted, the Court should deny the motion for protective order and allow the Justus deposition to proceed.[5]

In their reply, Plaintiffs again assert that because the only claim pending before the Court concerns coverage, Justice should not be subjected to "overly broad, intrusive, and possibly argumentative questions concerning her interpretation of policy language." [Doc. 58, at 1.] Plaintiffs argue that the question of coverage is one of law requiring the Court to construe the policy language and apply New Mexico law to determine if either policy affords liability coverage under the circumstances of this case.  According to Plaintiffs, Justus can shed no light on these legal questions.   Moreover, Plaintiffs identify inconsistencies in the Estate's response and in

---

[4]In the reply, Plaintiffs state that while Justus verified Plaintiffs' discovery responses, such verification does not subject her to a deposition. [Doc. 58, at 2.]

[5]The Estate devote several pages of its brief to arguing why good cause or excusable neglect purportedly exists to excuse the late filed motion to compel.  That argument belongs in the briefing of the motion to compel.

correspondence, indicating that the Estate may very well seek to depose Justus about her investigation and claims handling.

The Court finds that the proposed deposition of Justus is not relevant to the claims or defenses, as the declaratory judgment lawsuit focuses on the policy and its interpretation.  Presently, there is no contention of ambiguity, where the Estate argues the exclusion is not applicable because of Hancock's intoxication.

While the requested information concerning claims handling procedures, manuals, and prior interpretations, etc., may well be appropriate in a breach of contract or bad-faith claim, it does not appear reasonably calculated to lead to the discovery of admissible evidence in this case.  *See* Fed. R. Civ. P. 26(b).  The Court concludes that the request to take Justus's deposition is overly broad and seeks irrelevant information under Rule 26.  In other words, the Court finds good cause exists to grant the motion for protective order and protect Justus from undue burden and expense.

Further, the Court observes that it is authorized to limit the extent of discovery if it determines that the burden or expense of the proposed discovery outweighs its likely benefit.  Fed. R. Civ. P. 26(b)(2)(C)(iii).  Here, the Court concludes that after considering the needs of the case, the importance of the issues at stake, and the importance of the requested discovery in resolving those issues, the requested discovery is not proportional to the needs of the case.  Therefore, a protective order precluding Justus's deposition is appropriate.

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Protective Order [Doc. 44] is GRANTED, with the result that the Estate may not depose Jada Justus.

*Lorenzo F. Garcia*
_____
Lorenzo F. Garcia
United States Magistrate Judge

7