IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


USAA CASUALTY INSURANCE
COMPANY and GARRISON PROPERTY
AND CASUALTY INSURANCE COMPANY,

        Plaintiffs,

vs.                                              CIVIL NO.  12-1062 RB/LFG

THOMAS I. HANCOCK and THE ESTATE
OF JOSEPH THREADGILL,

        Defendants.

**Consolidated With**

PRISCILLA THREADGILL, Individually, and
as Personal Representative of the Estate of Joseph
Threadgill; DAVID THREADGILL and DANIELLE
THREADGILL,

        Plaintiffs,

vs.                                              CIVIL NO.  12-1257 RB/LAM

UNITED STATES AUTOMOBILE ASSOCIATION
CASUALTY INSURANCE COMPANY and
GARRISON PROPERTY AND CASUALTY
INSURANCE COMPANY,

        Defendants.

**ORDER DENYING MOTIONS TO COMPEL**

THIS MATTER is before the Court on two motions filed by Defendant The Estate of Joseph Threadgill ("Estate"):  "Defendants' Motion to Compel Discovery" [Doc. 53] and "Defendants' Motion and Memorandum in Support of Their Motion to Compel Plaintiff's Responses to Second Set of Discovery" [Doc. 55].  Both motions are fully briefed. [Doc. Nos. 53, 61, 65; 55, 63, 68.] The

Court carefully considered the pertinent law, arguments, and exhibits in resolving both motions to compel.

## Discussion

**I.     Motion to Compel No. 1 [Doc. 53]**

The Estate's first motion to compel takes issue with Plaintiffs' responses to Interrogatory No. 2 and Request for Production Nos. 1 and 3. [Doc. 53 at 2.] The Estate asks that the Court require Plaintiffs to fully and completely respond to these discovery requests.

Plaintiffs assert that the Estate filed the motion 70 days after service of Plaintiffs' objections, and that Motion to Compel No. 1 is untimely under the local rules. [Doc. 61 at 2.] In addition, Plaintiffs argue that the Court should sustain their objections to the discovery requests at issue.

On May 2, 2013, the Estate served the discovery requests at issue. [Doc. 53 at ¶ 1.] Responses were due on about June 4, 2013. [Id.] Plaintiffs requested and received an extension to respond, although there is some confusion whether Plaintiffs' responses were due June 7 or June 18, 2013. [Doc. 53 at ¶ 2; Doc. 61 at 1-2.] There is no dispute that the Estate did not file Motion to Compel No. 1 until August 20, 2013, approximately two months after receipt of Plaintiffs' answers and objections. [Doc. 53.]

The Estate concedes that it filed Motion to Compel No. 1 after the filing deadline, but it asks the Court to "exercise its equitable authority and extend the deadline based on excusable neglect and in the interests of justice." [Doc. 65 at 2.] The Estate relies on D.N.M.LR-Civ. 1.7 that provides the Court with authority to waive the local rules "to avoid injustice." The Estate argues at length why the Court should decide the untimely motion on the merits, including its position that during the pertinent time frame a related state court case was proceeding. [Doc. 65 at 3-4.]

The Court is unpersuaded by the Estate's argument and denies Motion to Compel No. 1 as untimely. The district's local rule requires that a motion to compel be filed within twenty-one days of service of an objection to discovery unless the parties promise to produce the documents, they agree to an extension of time within which to file the motion to compel, or the Court grants an extension. The rules further state that failure to proceed within the twenty-one day time frame "constitutes acceptance of the objection." D.N.M.LR-Civ. 26.6. The Estate neither argues nor demonstrates that it received an extension to file its motion to compel after the deadline. While true that a Court may extend the time limit upon a showing of "good cause," the Court does not find good cause to enlarge the twenty-one day period.

In addition, the Court relies on its earlier Protective Order as grounds to deny the motion on the merits. The Protective Order precluded discovery relating to claims handling matters, including the deposition of the claims adjuster Jada Justus. [Doc. 64]. In deciding to issue the Protective Order, the Court concluded that broad discovery, including the handling of claims, the investigation of claims, and the denial of the same was not warranted in this declaratory judgment lawsuit that focused on the policy, its exclusions, and its interpretation. [Id. at 7.]

The interrogatory at issue requests that Plaintiffs provide the following information: "describe each and every step that was taken by [Plaintiffs] . . . in the investigation in the Claims File . . ., and for each step please list the dates and person(s) involved." [Doc. 53 at 2-3; Doc. 53-1.] The document requests similarly relate to the claims file and ask for the complete file, including a copy of the file jacket, paper copies of the file contained on computer, any information deleted from the paper or computer files, etc., and instructions regarding investigation and coverage questions (in relation to the claims file). [Doc. 53 at 3-4; Doc. 53-1.] *See also* [Doc. 53-1, Request No. 3] (seeking copies of all information produced or received by USAA "in any way related to Claims File

3

. . . ."). The foregoing discovery disputes concern the same type of discovery sought that the Protective Order precluded.

As stated, the Court previously decided that discovery relating to claims handling matters and the proposed deposition of the claims adjuster, Jada Justus, were irrelevant to the claims or defenses because this declaratory judgment lawsuit focuses on the policy and its interpretation. The Court further observed that in the absence of ambiguity, parole evidence is not relevant. [Doc. 64 at 3] (*citing* C.R. Anthony Co. v. Loretto Mall Partners, 112 N.M. 504, 507 (1991)) (New Mexico's parole evidence rule precludes a party from introducing evidence extrinsic to the contract "for the purpose of construing the contract in a manner that varies or contradicts the clear and unambiguous language of the writing.").

The Court concludes that Motion to Compel No. 1 will be denied on grounds of untimeliness and additionally on the merits, based on the Court's earlier decision that the requested discovery is not relevant to the claims and defenses. [*See* Doc. 64.]

**II.     Motion to Compel No. 2 [Doc. 55]**

*A.     Timeliness of Motion to Compel No. 2:*

The possible untimeliness of Motion to Compel No. 2 is less clear than it was as to Motion to Compel No. 1. Plaintiffs assert that these second sets of interrogatories and document requests are duplicative and intended to re-open issues previously raised in the untimely Motion to Compel No. 1. In other words, Plaintiffs argue that Motion to Compel No. 2 is an improper attempt to circumvent the deadline the Estate missed with respect to the first motion to compel.

On July 2, 2013, the Estate filed these second sets of discovery requests. On August 7, 2013, Plaintiffs served responses or objections to the second discovery requests. [Doc. 55 at 2.] Thus, in accordance with D.N.M.LR-Civ. 26.6, the August 28 Motion to Compel No. 2, on its face, appears

timely, to the extent it is not duplicative of requests in the untimely first motion to compel. However, where a first motion to compel is untimely, a party is not allowed to circumvent time deadlines by serving a second set of similar discovery requests and a later timely motion to compel as to the subsequent discovery requests. *See, e.g.,* Sanchez v. Matta, 229 F.R.D. 649, 657 (D.N.M. 2004) (finding motion to compel untimely and an inappropriate attempt to use a deposition of an investigator to obtain investigative documents, to which defendant already had served objections).

In reviewing the two sets of discovery requests, it is not certain that the second discovery requests are "identical" to the earlier set. The second set of discovery requests seeks some information concerning the handling of the claim. But, the second set appears to request broader and additional information, including application for insurance, the enrollment form, renewal notices, premium statements, notices of cancellation, denial of claims, marketing and sales materials, and identification of other legal actions where a claimant alleged that an insured lacked mental capacity to commit an intentional act. [*See* Doc. 55-1.] In some instances, the requests for information are merely a different way of asking for the claim's file; as to other requests, it is not so obvious.

To the extent that the second set of discovery requests again seek the same information requested in the first set of discovery requests, the second Motion to Compel is untimely. However, the Court primarily denies Motion to Compel No. 2, as discussed below, because the second discovery requests again ask for extrinsic materials and information that are not relevant to a judicial determination in this declaratory judgment as to whether coverage is afforded under the pertinent policy language.

### B.    *Merits of Motion to Compel No. 2:*

The Estate's second motion to compel asks for additional answers and responses to Interrogatory Nos. 9, 10, 11, 12, 13, 15, 16, 17, and 18 and Request for Production Nos. 4, 5 6, 9, and 10. [Doc. 55 at 3.] In its motion, the Estate does not specifically discuss all of these enumerated discovery requests (*e.g.,* interrogatories 14 and 18 and document request 9), or the Court simply cannot identify the Estate's argument regarding each of these discovery disputes when arguments are presented in single paragraphs that span two, three and four pages. [*See* Doc. 55 at 6-9; 9-10.]

However, it is clear that some of the disputed discovery requests again concern the insurance claims file, decisions with respect to the claim request, individuals responsible for denying the claim, and handling of the file. [Doc. 55-1.] For example, Interrogatory No. 9 asks for files documents memoranda, or other papers relating to applications for insurance, renewal notices, premium statements, notices of cancellation, denial of claims, correspondence relating to the underlying shooting. These materials appear to be information contained in a claims file. Moreover, there is no showing how they are relevant to interpretation of the contract and exclusions.

The Estate also seeks a complete copy of Plaintiffs' underwriting files relating to the insurance policy in this case, claims adjuster, Jada Justus's personnel file, sales or marketing materials concerning the sale of the insured's policies, and internal company training and claims handling manuals. [Id.]   In sum, a number of the discovery requests are overly broad and do not appear reasonably calculated to lead to the discovery of admissible evidence based on the claims and defenses.  *See* Fed. R. Civ. P. 26(b)(1).  In addition, some of the discovery requests again seek information that is part of the claims file – requests that the Protective Order already precluded. Thus, the Court will not require supplementation of answers or production of documents in response to requests that are the subject of Motion to Compel No. 2.

In reaching this decision, the Court acknowledges the Estate's position that under New Mexico law, "claim ambiguity in the policy provisions" may justify requests for extrinsic evidence. [Doc. 68 at 2.] In support of this argument, the Estate cites Mark V, Inc. v. Mellekas, 114 N.M. 778, 781 (1993) for the proposition that New Mexico law allows courts to consider extrinsic evidence to make a preliminary finding on the question of ambiguity. Id.

In Mark V, the New Mexico Supreme Court explained:

> New Mexico law, then, allows the court to consider extrinsic evidence to make a preliminary finding on the question of ambiguity. The present law in this state concerning the interpretation of ambiguous or unclear language in written agreements may be summarized as follows: An ambiguity exists in an agreement when the parties' expressions of mutual assent lack clarity. C.R. Anthony, 112 N.M. at 509 n. 2, 817 P.2d at 243 n. 2. The question whether an agreement contains an ambiguity is a matter of law to be decided by the trial court. Levenson v. Mobley, 106 N.M. 399, 401, 744 P.2d 174, 176 (1987). The court may consider collateral evidence of the circumstances surrounding the execution of the agreement in determining whether the language of the agreement is unclear. C.R. Anthony, 112 N.M. at 508–09, 817 P.2d at 242–43. If the evidence presented is so plain that no reasonable person could hold any way but one, then the court may interpret the meaning as a matter of law. Id. at 510, 817 P.2d at 244. If the court determines that the contract is reasonably and fairly susceptible of different constructions, an ambiguity exists. Vickers v. North Am. Land Dev., Inc., 94 N.M. 65, 68, 607 P.2d 603, 606 (1980).

The Estate did not identify which parts of the contract are "reasonably and fairly susceptible" to different constructions, such that ambiguities exist. Instead, they argue that discovery will "throw light on Plaintiff's claims for 'unambiguous' nature of the provisions." [Doc. 68 at 3, 4.] As earlier indicated in the Protective Order, the Estate does not argue ambiguity in the contract, but focuses its claim on the contention that Defendant Thomas Hancock was so inebriated that he could not form specific criminal intent, and therefore, the "commission of a crime" exclusion is inapplicable. [Doc. 64, at 3-4.]

The New Mexico Supreme Court's decision in Mark V notes that a court *may* allow exploration of extrinsic evidence if the contract language is unclear. It would be incumbent on the Estate to make some showing of ambiguity so as to trigger discovery and/or relevancy of parole evidence. The Court's decision in Mark V does not mandate discovery of extrinsic evidence in every situation. This Court is not persuaded that the policy language is unclear or that the Estate demonstrated the lack of clarity sufficient to require discovery of extrinsic evidence.

In addition, the Court does not agree that discovery is so broad under Fed. R. Civ. P. 26(b)(1) that parties are automatically entitled to discover extrinsic evidence in this case. The 2000 amendments to Rule 26(b)(1) represented efforts to narrow the scope of discovery and prevent parties, for example, from engaging in "fishing expeditions." Fed. R. Civ. P. 26(b) (Advisory Committee Notes to 2000 Amendments). Moreover, under Fed. R. Civ. P. 26(b)(2)(C), a court "must limit" discovery if it determines that the information sought is unreasonably cumulative, duplicative, or obtainable from some other source that is more convenient, less burdensome, or less expensive. Fed. R. Civ. P. 26(b)(2)(C)(i). In addition, the Court is required to limit information sought if the burden or expense of the proposed discovery outweighs its likely benefit, after considering the needs of the case and the importance of the discovery in resolving the issues. Fed. R. Civ. P. 26(b)(2)(C)(iii). After balancing the requested information with the needs of the case and its importance in resolving the issues, the Court will not require Plaintiffs to provide further responses to the second set of discovery requests.

For all of the above-stated reasons, the Court denies the Estate's two Motions to Compel [Doc. Nos. 53, 55].

IT IS SO ORDERED.

                                                _____
                                                Lorenzo F. Garcia
                                                United States Magistrate Judge