IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

USAA CASUALTY INSURANCE COMPANY
and GARRISON PROPERTY AND CASUALTY
INSURANCE COMPANY,

       Plaintiffs,

vs.                                                         No. CIV 12-1062 RB/LAM

THOMAS I. HANCOCK and the
ESTATE OF JOSEPH THREADGILL,

       Defendants.

MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiffs' Motion for Summary Judgment (Doc. 70), Defendant the Estate of Joseph Threadgill's (the Estate's) Motion for Summary Judgment (Doc. 71), and the Estate's Motion for Certification (Doc. 91). Jurisdiction arises under 28 U.S.C. § 1332. Having considered the submissions of counsel, the record, and relevant law, the Court grants Plaintiffs' motion and denies the Estate's motions.

I.      **Background**

Plaintiffs filed suit in this Court seeking a declaratory judgment that insurance policies issued by Plaintiffs do not provide coverage for Thomas Hancock's shooting Joseph Threadgill to death in the parking lot of a nightclub in Albuquerque, New Mexico. The Estate claims that Hancock's automobile insurance policy and Hancock's mother's homeowners' insurance policy cover the damages resulting from the shooting.

In their motion for summary judgment, Plaintiffs argue that: (1) no coverage exists under either policy because the shooting was neither an occurrence nor an accident; (2) the "expected

and intended acts" exclusion applies; and (3) the "criminal acts" exclusion applies to bar coverage. (Doc. 70). In response to Plaintiffs' motion, and in support of its cross motion for summary judgment and motion for certification, the Estate argues that: (1) the perpetrator was unable to form the requisite intent due to intoxication or impairment; (2) questions of fact preclude summary judgment; and (3) the Court should certify to the New Mexico Supreme Court the question of whether an insurance company can claim the "intended and expected acts" exclusion when the intoxicated insured is unaware of his actions. (Docs. 71 and 91).

## II.     Legal Standard and Controlling Law

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In cases where the moving party will not bear the burden of persuasion at trial, it bears the initial responsibility of identifying an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "If the movant meets this initial burden, the burden then shifts to the nonmovant to 'set forth specific facts' from which a rational trier of fact could find for the nonmovant." *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007). When applying this standard, the court examines the record, makes all reasonable inferences, and views the facts in the light most favorable to the non-moving party. *Taylor v. Roswell Indep. Sch. Dist.*, 713 F.3d 25, 34 (10th Cir. 2013).

The Court applies New Mexico substantive law in this diversity case. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Where no controlling state decision exists, the Court ascertains and applies New Mexico law and predicts what the New Mexico Supreme Court would do if faced with the specific issues. *Wankier v. Crown Equip. Corp.,* 353 F.3d 862, 866 (10th Cir. 2003).

III.     **Facts**

On August 27, 2011, Joseph Threadgill was employed as a doorman at TD's Showclub in Albuquerque, New Mexico. (Doc. 4). Thomas Hancock was a patron. (*Id.*) After Hancock got into a fight with other customers, doormen broke up the fight, escorted Hancock outside, and sat him on a bench. (*Id.*) Doorman Todd Williams spoke to Hancock, and Hancock appeared to be impaired and "out of it". (Deposition of Todd Williams at 70-71, Doc. 76-1). Threadgill tried to call Hancock a cab. (*Id.* at 86, 88, 89). A group of men exited the club and punched Hancock five or six times in the face. (Affidavit of Theresa LeFebre, Doc. 76-2). A doorman told Hancock that someone was coming to pick him up. (*Id.*) Hancock wandered into the parking lot and Threadgill followed. (LeFebre Aff.; Doc. 4). After reaching his vehicle, Hancock started shooting. (*Id.*; Doc. 70-1; Doc. 70-2; Doc. 76-2).

Larry Saunders was on the curb near the parking lot and observed Hancock shoot Threadgill. (Deposition of Larry Saunders at Doc. 76-3) After the initial shots, Threadgill fell to the ground. (*Id.*) Hancock fired several shots at the club, stepped over Threadgill, and shot Threadgill again. (Saunders Dep. at 86-89). Saunders saw that Hancock aimed the gun during the shooting. (*Id.* at 86).

The day after the shooting, Hancock told police that he remembered being at the club but he had some gaps in his memory. (Doc. 87-3). Hancock remembered he had two handguns in his car, a .357 and a .380. (*Id.*) He remembered "turning and firing [his] weapon at somebody." (*Id.*) Hancock thought he started shooting from inside his vehicle. (*Id.*) He stated that he used the second gun after the first gun ran out of bullets and he did not remember if he was still in his vehicle when he fired the second gun. (*Id.*) Hancock believed that he fired seven shots.[1] (*Id.*)

---

[1]  Williams, who was inside the club, heard seven shots. (Williams Dep. at 72).

Hancock thought that he shot at a person but he did not know why he shot the person. (*Id*.)

Hancock drove from the parking lot with the guns in his vehicle. (*Id.*) Police located Hancock at

his mother's house a few hours after the shooting, arrested Hancock, and recovered two handguns

in a cooler in his vehicle. (*Id*.)

Threadgill was transported by ambulance to University of New Mexico Hospital where he

died from multiple gunshot wounds on August 27, 2011. (Doc. 4). Ross E. Zumwalt, M.D. of the

Office of the Medical Investigator supervised Threadgill's autopsy and determined the manner of

death was non-accidental homicide. (Deposition of Ross Zumwalt, M.D. at 4-5, Doc. 70-2). Dr.

Zumwalt based this determination on the totality of the information surrounding the case,

including circumstantial evidence, police reports, investigation reports, medical findings, and

subsequent investigation. (*Id*.) In reaching the conclusion that the homicide was non-accidental,,

Dr. Zumwalt found it significant that Threadgill was shot several times and sustained fatal

wounds. (*Id.*)

Dr. Zumwalt testified that Threadgill sustained four gunshot wounds that were likely

caused by three bullets. (Zumwalt Dep. at 7-8). The first shot hit the lateral aspect of the right

forearm at fairly close range. (Zumwalt Dep. at 8). This bullet exited the other side of the forearm

and re-entered the right upper chest and neck. (*Id.* at 8, 11-13). The second shot was not fired at

close range and hit the left chest. (*Id*.) The third shot was to the back of the head. (*Id.* at 8). Dr.

Zumwalt opined that the gunshot wound to the right arm and chest occurred when Threadgill's

arm was extended, and the shot to the head occurred after the shot to the arm. (*Id*. at 8-9). The

bullet to the head fractured Threadgill's skull and was recovered from his neck. (*Id.* at 10).

On September 17, 2011, a Bernalillo County Grand Jury issued an Indictment charging

Hancock with one count of murder in the first degree (willful and deliberate), in violation of N.M.

STAT. ANN. § 30-02-01(A)(1), one count of shooting at or from a motor vehicle (great bodily harm), in violation of N.M. STAT. ANN. § 30-03-08(B), and one count of tampering with evidence (highest crime a capital, first or second degree felony) in violation of N.M. STAT. ANN. § 30-22-05. (Doc. 4; Doc. 70-1). Hancock remains detained and awaits trial. *See State of New Mexico v. Thomas I. Hancock*, D-202-CR-201104244, Second Judicial District, Bernalillo County, New Mexico. Trial is set for October 24, 2014. (*Id.*)

USAA Casualty Insurance Company ("USAA") issued a homeowners' insurance policy to Pamela and Andrew Bosma with limits of $500,000.00 covering the period from June 11, 2011 to June 11, 2012. (Doc. 4). As Hancock lived with Ms. Bosma at the time of the incident, he qualifies as an insured under the homeowners' insurance policy. (*Id.*) Garrison Property and Casualty Insurance Company ("Garrison"), a wholly owned subsidiary of USAA, issued an automobile insurance policy to Hancock with liability limits of $25,000 per person and $50,000 per accident covering the period from July 18, 2011 to January 18, 2012. (*Id.*)

On September 21, 2012, the Estate demanded payment from Plaintiffs for the policy limits of both policies for damages arising from the wrongful death of Threadgill. (*Id.*) On October 15, 2012, Plaintiffs filed the instant suit in this Court under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and the New Mexico Declaratory Judgment Act, N.M. STAT. ANN. §§ 44-6-1, *et seq.*, seeking a declaration that the insurance policies do not cover damages arising out of the death of Threadgill.

## IV.   Discussion

### A.   The policies do not cover the shooting.

The homeowners' policy provides personal liability coverage for claims or suits "brought

against any 'insured' for 'damages' because of 'bodily injury' . . . or 'personal injury' . . . caused by an 'occurrence' . . . ." (Doc. 4-1 at 31). The homeowners' policy defines "occurrence" as "[a]n accident . . . which results . . . in 'bodily injury'. . . ." (*Id*. at 8). The automobile policy provides liability coverage for "'bodily injury' for which any covered person becomes legally liable because of an auto accident." (Doc. 4-2 at 30). The policies do not define the word "accident."

The New Mexico Supreme Court has held that, when the word 'accident' is not defined in an insurance policy, 'the word must be interpreted in its usual, ordinary and popular sense.' " *Vihstadt v. Travelers Ins. Co.*, 709 P.2d 187, 188 (N.M. 1985) (quoting *Watson v. Western Cas. & Sur. Co*., 382 P.2d 723, 725 (N.M. 1963)). In *Vihstadt,* the New Mexico Supreme Court discussed possible definitions of the word "accident," including: (1) "'an unlooked for mishap, or an untoward event which is not expected or designed,'" *id.* (quoting *Webb v. New Mexico Publishing Co.*, 141 P.2d 333, 336 (N.M. 1943)), and (2) "'an event occurring without design or purpose, or unintentionally on the part of the assured. . . . [However, the definition of 'accidental'] does not include the result of willful design].'" *Id.* (quoting *King v. Travelers Ins. Co.*, 505 P.2d 1226, 1229 (N.M. 1973).

Accordingly, New Mexico law establishes that liability insurance will not extend coverage to deliberate, harmful acts even if the resulting injury is somewhat different than what the insured intended. *See Vihstadt*, 709 P.2d at 189 (aspirin poisoning caused by teen's voluntary and deliberate ingestion of 50 aspirin tablets was not an accident, even though the insured's intent was to scare her mother or commit suicide, not to induce aspirin poisoning). In *Vihstadt*, the New Mexico Supreme Court determined that the girl's ingestion of the aspirin tablets was not an "unlooked for mishap or an untoward event which was not expected or designed." 709 P.2d at 189. The court rejected "the distinction between accidental means and accidental results," and

reaffirmed its earlier holding that "[t]here was an accident throughout, or there was no accident at all." *Id*. Thus, New Mexico law holds that intentional acts do not qualify as accidental merely because the result was unintended. *Vihstadt*, 709 P.2d 189. Rather, "where the harm is the natural result of the voluntary and intentional acts of the insured, it is not caused by accident, even though the result may have been unexpected, unforeseen, and unintended." *Hartford Fire Ins. Co. v. Gandy Dancer, LLC,* 864 F. Supp. 2d 1157, 1196 (D.N.M. 2012) (holding that where contractor's intent in designing water diversion system was to divert water onto landowner's property, flooding of landowner's property was not an "occurrence" or "accident" under the policy). Similarly in this case, while Hancock may or may not have formed the specific intent to kill Threadgill, he undoubtedly acted voluntarily and intended to shoot a person. Therefore the shooting does not qualify as accidental under New Mexico law.

This conclusion is supported by the circumstances of the shooting, which clearly establish that the shooting was not an accident. Hancock walked to his vehicle, retrieved a handgun and started shooting. When he ran out of bullets, he grabbed his second gun and shot Threadgill again. Saunders saw Hancock aim during the shooting. There is no evidence that the guns discharged accidentally. The autopsy showed that Hancock shot Threadgill at least three times from different distances and directions. The first shot was to the left chest from a distance. The second shot was at close range to Threadgill's extended right arm with the bullet continuing to his right chest and neck. The third shot was to the back of the head. Hancock drove from the scene of the shooting with the guns in his vehicle. At the time of his arrest, Hancock knew that the guns were concealed in a cooler. There are no facts suggesting that the guns discharged accidentally. From these facts, it is not possible to reasonably infer that the shooting was an accident. Accordingly, the policies do not cover the shooting.

**B.**     **If coverage existed, the "expected or intended acts" exclusion would apply.**

The homeowners' policy contains an "expected or intended acts" exclusion, which excludes personal liability coverage for bodily injury, "[w]hich is reasonably expected or intended by any "insured" even if the resulting "bodily injury" . . . [i]s of a different kind, quality or degree than initially expected or intended . . . ." (Doc. 4-1 at 32). The automobile policy contains an "intended acts" exclusion, which excludes liability coverage "for any covered person . . . [w]ho intentionally acts or directs to cause [bodily injury] . . . or who acts or directs to cause with reasonable expectation of causing [bodily injury] . . . ." (Doc. 4-2 at 31). The Estate argues that this exception does not apply because Hancock was unable to act intentionally because he was intoxicated and impaired due to blows to the head.

The New Mexico Supreme Court has held that "an insurance policy may exclude injuries arising from intentional acts so long as the exclusionary clause is clear and does not conflict with statutory law. *Safeco Ins. Co. v. McKenna*, 565 P.2d 1033, 1036 (N.M. 1977). The "intended or expected acts" exclusion "is designed to prevent indemnifying an insured against loss from his own wrongful acts." *Id*. Such an "exclusionary clause excludes harm of the same general type as the insured intended." *Knowles v. United Services Auto. Ass'n.,* 832 P.2d 394, 397 (N.M. 1992). In New Mexico, direct evidence of intent is not required and is inferred from the act itself and the surrounding circumstances. *Sena v. Travelers Ins. Co.*, 801 F. Supp. 471, 476 (D.N.M. 1992) (holding that New Mexico law inferred intent where an insured claimed not to have intended or expected to cause harm by his sexual overtures to a minor where the insured's acts were inherently harmful, performed voluntarily, and the injury was the natural result of the acts).

In this case, the shooting was inherently harmful, performed voluntarily, and the gunshot wounds to Threadgill were the natural result of the shooting. Hancock told police that he

remembered firing his guns at a person. After he ran out of bullets with the first gun, he picked up a second gun and fired another shot. It is material that Hancock thought that he shot at a person even if he could not recall why he shot the person. While Hancock might not have intended to shoot Threadgill, he intended to shoot a person. For this reason, the shooting of Threadgill is the same general type of harm that Hancock intended. Thus, even if coverage existed, it would be excluded by the "expected or intended acts" exclusion.

### C.      If coverage existed, the "criminal acts" exclusion would apply.

The homeowners' policy excludes coverage for bodily injury "[a]rising out of or caused by the commission of, attempting to flee from, or avoiding apprehension for a criminal act for which intent is a necessary element." (Doc. 4-2 at 34). The Estate argues that this exception does not apply because Hancock was intoxicated and impaired due to being punched in the head.

The New Mexico Supreme Court recognizes that, in the criminal law area, it is virtually assumed that intent will not be shown by direct evidence, but by the surrounding acts and circumstances. *See e.g., State v. Frank*, 589 P.2d 1047, 1049 (N.M. 1979). Notably, New Mexico law establishes that voluntary intoxication is only relevant to specific intent crimes and offenses requiring subjective knowledge. *State v. Brown*, 931 P.2d 69, 76 (N.M. 1996). Voluntary intoxication has no bearing upon general intent crimes or strict liability offenses. *See id.* (observing that evidence of voluntary intoxication is not admissible in relation to general intent crimes); *State v. Garcia*, 246 P.3d 1057, 1068 (N.M. 2011) (stating that "voluntary intoxication provides a defense to specific intent crimes where the intoxication is to such a degree as would negate the possibility of the necessary intent" (internal quotation marks and citation omitted)). The fact that Hancock was involuntarily punched in the head before the shooting does not change the calculus because New Mexico law holds that involuntary impairment does not negate the criminal

nature of a defendant's acts. *State v. Gurule*, 252 P.3d 823, 828 (N.M. Ct. App. 2011) ("involuntary intoxication is a defense only when it negates the intent element of a crime.").

In this case, the evidence of record establishes that Hancock shot Threadgill at least three times with two guns. Notably, Hancock told police that he remembered shooting someone, but he did not remember why. The Office of the Medical Examiner determined that the cause of death was non-accidental homicide. Hancock is charged with first degree murder, shooting at or from a motor vehicle, and tampering with evidence. While Hancock may or may not be convicted of first degree murder, a specific intent crime, it is clear that he committed some degree of homicide. Based on the facts of this case, coverage would be excluded by the "criminal acts" exclusion of the policies because Hancock's act of shooting Threadgill was criminal.

### D.       Certification is unwarranted.

The Estate "requests that the New Mexico Supreme Court be asked to determine whether [an] insurance company can claim reasonably [the] intended and expected acts exclusion of the policy when the intoxicated insured is unaware of his actions." (Doc. 91 at 2). The Estate does not request certification of the question of whether an insurance company can validly claim the policies do not cover the shooting because the shooting was not an accident or the question of whether an insurance company can validly claim that the criminal acts exclusion applies under the facts of this case.

A federal court has the discretion to certify a question where "the legal . . . issue is novel and the applicable state law unsettled." *Armijo v. Ex Cam, Inc.,* 843 F.2d 406, 407 (10th Cir. 1988). However, certification "is not to be routinely invoked whenever a federal court is presented with" an unsettled issue. *Allstate Ins. Co. v. Brown,* 920 F.2d 664, 667 (10th Cir. 1990). In most cases, "federal courts have the duty to decide . . . difficult or uncertain" questions of state law.

*Society of Lloyd's v. Reinhart,* 402 F.3d 982, 1001 (10th Cir. 2005). The applicability of the "intended or expected acts" exception is neither novel nor is the applicable law unsettled.

Moreover, the Estate does not request certification of the other issues discussed herein. Thus, if the request for certification were granted, it would not affect the Court's analysis of the non-certified issues which are also dispositive. For these reasons, the motion for certification will be denied.

## V.    Conclusion

Plaintiffs have satisfied their burden of demonstrating the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. The Estate failed to meet its burden with respect to its cross-motion for partial summary judgment and failed to show a genuine issue for trial. Viewed in the light most favorable to the Estate, the record demonstrates that Plaintiffs are entitled to judgment as a matter of law that the policies do not provide coverage for damages caused by the shooting.

**THEREFORE,**

**IT IS ORDERED** that Plaintiffs' Motion for Summary Judgment (Doc. 70) is **GRANTED.**

**IT IS FURTHER ORDERED** that the Estate's Motion for Summary Judgment (Doc. 71) and Motion for Certification (Doc. 91) are **DENIED.**

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**